UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARRIEM B. SHAHEED,<br><br>  Plaintiff,<br><br>  v.<br><br>CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES, et al.,<br><br>  Defendants. | Case No. 13-cv-05751-VC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION FOR TEMPORARY INJUNCTIVE ORDER**<br><br>Re: Dkt. Nos. 37, 48 |

Plaintiff Karriem B. Shaheed, a state inmate, filed this *pro se* civil rights complaint under 42 U.S.C. § 1983 alleging that Dr. Denise Reyes, Dr. Elena Tootell, Nurse N. Podolsky, Nurse J. De La Cruz, Janet Lewis and Andrew Deems were deliberately indifferent to his serious medical needs by denying him proper care for his injured ankle. The defendants have filed a motion for summary judgment, which is fully briefed. Shaheed filed a motion for "emergency temporary injunctive order," which the defendants oppose. For the reasons explained below, the defendants' motion for summary judgment is granted and Shaheed's motion for injunctive relief is denied.[1]

**BACKGROUND**

**I. Undisputed Facts**

On February 8, 2012, Shaheed injured his left ankle while playing basketball. Shaheed Dec., ¶ 1; Reyes Dec., ¶ 3. On February 12, 2012, X-rays of Shaheed's ankle were taken. *Id.*

---

[1] In his original complaint, Shaheed also asserted this claim against the California Correctional Health Care Services ("CCHCS") and Dr. Steve Millimond, an employee at Shared Imaging. Shaheed did not name the CCHCS in his amended complaint; therefore any claim asserted against the CCHCS is dismissed. Millimond is unserved because he is no longer an employee of Shared Imaging and has left no forwarding address. *See* Dkt. No. 18. The only allegation against him is that he performed a CT scan instead of the MRI that was ordered by Shaheed's primary care physician. *See* Am. Comp. at 8. However, the evidence shows that Millimond performed an MRI, as ordered. *See* Reyes Dec., Ex. A at 21. Therefore, the claim against Millimond is dismissed. The defendants also move to dismiss the claim against Andrew Deems, in his official capacity. This is denied as moot; the amended complaint appears to assert a claim against Deems only in his individual capacity.

The results showed evidence of old fractures and a possible chronic ligament injury. *Id.* On May 2, 2012, Shaheed was seen by his primary care physician, Dr. John Cranshaw, who noted Shaheed's ankle pain and X-ray results showing an old healed fracture, but nothing more significant. Cranshaw's opinion was that Shaheed suffered from a significant sprain and needed a "fracture walker." *Id.*, Ex. A at 9. Cranshaw noted that Shaheed was quite concerned about his ankle and, after an extensive discussion, Cranshaw agreed to refer Shaheed to orthopedics for a second opinion. *Id.*; Shaheed Dec., ¶ 3. Cranshaw's referral to orthopedics was denied by Chief Medical Officer Elena Tootell because Shaheed had not yet tried a splint or physical therapy to alleviate his ankle pain. Reyes Dec., ¶ 4, Ex. A at 11-12.

On May 29, 2012, Cranshaw referred Shaheed to physical therapy. *Id.* ¶ 5, Ex. A at 13; Shaheed Dec., ¶ 4. Robert Spriggs, Shaheed's physical therapist, noted the slow improvement of Shaheed's ankle pain and that his healing time would probably be fourteen to sixteen months. *Id.*; Reyes Dec., ¶ 4, Ex. A at 15. On August 3, 2012, Cranshaw examined Shaheed and submitted another referral to orthopedics, which was approved. On August 7, 2012, Shaheed saw Dr. Lyon, an orthopedic consultant. *Id.* ¶ 6, Ex. A at 16-20; Shaheed Dec., ¶ 6. Lyon ordered an MRI scan of Shaheed's left ankle. The MRI showed that Shaheed had a subtle bone bruise and mild joint effusion (swelling) and no fracture. Reyes Dec., ¶ 7, Ex. A at 21-22; Shaheed Dec., ¶ 8.

On October 4, 2012, Shaheed saw his new primary care physician, Dr. A. Pachynki, who noted that Shaheed had "bothersome ankle pain" and scheduled a cortisone injection to relieve the pain. On October 18, 2012, Lyon administered the cortisone injection and also recommended that Shaheed be seen by a foot and ankle specialist at the University of San Francisco ("UCSF"). *Id.* at ¶ 9; Reyes Dec., ¶ 9, Ex. A at 25-28. On December 19, 2012, Shaheed had a consultation with Dr. Olsen, UCSF foot and ankle specialist, who diagnosed Shaheed as suffering from osteoarthritis, a degenerative bone disease. She administered a second cortisone injection to relieve pain. Olsen noted that surgery is more reliable in patients that have relief from a cortisone injection and, because Shaheed reported no pain relief from the injection, he would not benefit from surgery. *Id.* at ¶ 10, Ex. A at 29-36; Reyes Dec., ¶ 10.

On February 14, 2013, upon the referral of Pachynki, Shaheed's ankle was X-rayed to

1    reassess the possibility of a fracture. The results did not show evidence of a fracture. Reyes Dec.,
2    ¶ 11, Ex. A at 44. On March 13, 2013, upon the referral of Pachynki, Shaheed received a second
3    MRI of his left ankle. Unlike the previous MRI, this scan showed subcortical edema in the distal
4    tibia and lateral aspect of the talar dome suspicious for developing osteochondral lesions and a tear
5    of the anterior talofibular ligament. Shaheed Dec., ¶ 13; Reyes Dec., ¶ 12, Ex. A at 48. On
6    March 19, 2014, Pachynki reviewed the results with Shaheed. Shaheed Dec., ¶ 13. She noted that
7    Shaheed had no change in pain level and he was ambulating with no apparent distress. Reyes
8    Dec., ¶ 13, Ex. A at 50.

9          On March 21 and April 11, 2013, Shaheed saw his physical therapist, who noted that
10   Shaheed reported pain improvement following the cortisone injections at UCSF. He suggested
11   that the pain improvement and the MRI findings might prompt the UCSF specialist to reconsider
12   surgical intervention. *Id.* at ¶ 14, Ex. A at 51-52; Shaheed Dec., ¶ 14.

13         On April 22, 2013, Shaheed had a follow-up appointment with Olson at UCSF. Olson
14   discussed with Shaheed surgical and non-surgical treatment options. Olson explained that
15   arthroscopic microfracture surgery would help deliver blood to the injured area but, after the
16   surgery, Shaheed would be unable to bear weight on the ankle for at least four to six weeks.
17   Reyes Dec. ¶ 15, Ex. A at 53-58; Shaheed Dec., ¶ 15. After this discussion, Shaheed and Olsen
18   agreed that ankle surgery would be the best option and the next visit would be for the actual
19   surgery. *Id.*; Reyes Dec., Ex. A at 58.

20         On May 7, 2013, Dr. Reyes saw Shaheed for his follow up appointment after the surgery
21   consultation with Olson. *Id.* at ¶ 16; Shaheed Dec., ¶ 16. This was the first and only time Reyes
22   saw Shaheed. Reyes Dec., ¶ 16, Ex. A at 59-61.

23   **II. Disputed Facts**

24         The following is Shaheed's testimony regarding his May 7, 2013 office visit with Reyes.
25   Reyes informed Shaheed that, after surgery on his left ankle, he would not be able to bear weight
26   on the ankle for six to eight weeks. Shaheed Dec., ¶ 16. Shaheed expressed concern about
27   walking up stairs and discussed getting a lower bunk before surgery. *Id.* Reyes explained that he
28   did not fit the criteria for a lower bunk. *Id.* She explained that, after surgery, he would pass

through the triage and treatment area, which would provide any particular housing accommodations he would need. *Id.* He wanted to know more about the housing accommodations, but Reyes then became angry and mean. *Id.* Shaheed then stated that he agreed "with her terms" for surgery. *Id.* However, Reyes was not comfortable with Shaheed's answer and delayed his surgery. *Id.* Shaheed told Reyes that he would speak to his counselor about a transfer because he "could not get treatment here." *Id.* Reyes said she would see Shaheed in one month, but Shaheed never saw her again. *Id.* On June 13, 2013, Shaheed filed an administrative grievance about Reyes' alleged decision to deny him medical treatment. *Id.* ¶ 17.

On January 15, 2015, Shaheed saw Olson at UCSF to discuss ankle surgery. Olson said that, because of the long delay, Shaheed would need four different kinds of surgery, each taking six to eight months of rehabilitation. *Id.* ¶ 28.[2]

The following is Reyes' testimony about the May 7, 2013 office visit. During the visit, Shaheed expressed concerns about postoperative accommodations and management. Reyes Dec., ¶ 17. Reyes had a hard time understanding Shaheed

> because he was vague and would not tell me exactly what he was asking for. I gathered that he was concerned about being on a floor higher than ground level because Dr. Olson told him that he could not bear weight for at least four to six weeks after surgery. I agreed with Mr. Shaheed that there was a possibility of postoperative risks due to his institutionalization. He will have limited physical therapy opportunity and might be presented with difficulty being able to be completely non-weight bearing. I informed him that after surgery, he would pass through the Triage and Treatment Area ("TTA") where he could talk to a doctor about housing accommodations appropriate for his recovery. I explained that he would need to be housed in the Outpatient Housing Unit ("OHU") postoperatively if he were to be designated as strictly non-weight bearing and that he might need some postoperative time in the OHU. He was not willing to do this. I explained that if he was not willing to at least consider OHU as a possibility, then I would not feel comfortable referring him for the surgery.

---

[2] The defendants object to Shaheed's statements about his present medical condition on the ground that, without the medical records, they are inadmissible hearsay. The objection is overruled; the statements are not admitted to show that Shaheed now needs four different surgeries for his ankle, but to show that, in general, the condition of the ankle is worsening. Furthermore, the defendants could have provided Dr. Olson's report to refute Shaheed's account of the visit, but they did not. But as discussed below, even with this evidence, no reasonable jury could conclude that Reyes was deliberately indifferent to Shaheed's serious medical needs.

4

*Id.*, Ex. A at 59-61.

When Shaheed said he would talk to his counselor about being transferred to another prison, Reyes stated that he did not meet the criteria for a medical transfer but, based on his concerns, "he might want to hold off on surgery until he transferred to the next institution." *Id.* ¶ 18. She suggested that they meet again in June or July 2013 after he talked to his counselor. *Id.* Shaheed then became disgruntled and angry and raised his voice, so Reyes was "forced to end the visit." *Id.* Reyes states that she did not deny Shaheed's request for surgery, but deferred the decision based on his concerns. *Id.* ¶ 19. Reyes did not believe there was any rush or urgency for the surgery because it was an elective procedure. *Id.* She states that Shaheed's medical record, which indicated that he tolerated night pain and he did not refill his Tylenol prescription, indicated an acceptable risk for delaying surgery. *Id.*

Presently, Shaheed's medical concerns are being attended by physicians Dr. Espinosa, Dr. Lee, Dr. Rivero and Dr. Beatty. *Id.* ¶ 20. Shaheed also was seen by podiatrist, Dr. Griffith. On March 3, 2014, he was seen again at UCSF by Olson, who noted that Shaheed's gait was normal, he had good alignment and he was in no acute distress. Olson discussed injections and medications to alleviate pain and scheduled another MRI to determine which injuries could be treated with surgery. *Id.*

## LEGAL STANDARD

Summary judgment is only proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that

5

1  demonstrate the absence of a genuine issue of material fact. The burden then shifts to the
2  nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions,
3  answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a
4  genuine issue for trial.'" *Id.* at 324.

5        In considering a motion for summary judgment, the court must review the evidence in the
6  light most favorable to the nonmoving party. *Leslie v. Grupo ICA,* 198 F.3d 1152, 1158 (9th Cir.
7  1999). The court's function on a summary judgment motion is not to make credibility
8  determinations or weigh conflicting evidence with respect to a disputed material fact. *T.W. Elec.*
9  *Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987).

## DISCUSSION

### I. Claim Against Dr. Reyes

      Shaheed argues that Reyes delayed and denied surgery for his injured left ankle, which caused increasing pain and a deteriorating left ankle.

      To establish an Eighth Amendment violation based on the failure to attend to medical needs, a prisoner must allege both (1) a serious medical need and (2) deliberate indifference to that need by prison officials. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). A serious medical need exists where "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Instead, deliberate indifference involves a purposeful act or failure to act. *McGuckin*, 974 F.2d at 1060. Deliberate indifference may be shown when prison officials deny, delay or intentionally interfere with medical treatment, or it

6

may be shown in the way in which they provide medical care. *Id.* at 1062.

The defendants do not dispute that Shaheed's injured left ankle is a serious medical issue. Instead, they argue that the evidence fails to show that Reyes, or any defendant, was deliberately indifferent in treating his ankle. A review of the evidence shows that the parties agree on everything except what occurred at Shaheed's May 7, 2013 appointment with Reyes. It appears that there was miscommunication between Shaheed and Reyes about whether Shaheed agreed to be housed in the OHU after surgery. According to Reyes, she postponed Shaheed's surgery because she thought he did not want to be housed in OHU. According to Shaheed, he did agree to being housed in OHU and he interpreted Reyes' postponement of his surgery as a denial of treatment for his surgery. However, in his 602 appeal, although Shaheed stated that Reyes denied him treatment, he also indicated that she put off his surgery for a month. Opp., Ex. H at 1. Therefore, even though Shaheed claims that Reyes denied him treatment, he recognized that she denied him treatment for only one month. On this motion for summary judgment, Shaheed's version of events is taken to be true and it will be assumed that Reyes temporarily denied the surgery. However, even when viewed in the light most favorable to Shaheed, no reasonable jury could conclude that Reyes did so with deliberate indifference to his serious medical needs.

Shaheed saw Reyes only one time, on May 7, 2013. After the May 7 appointment, at which Reyes temporarily denied Shaheed's ankle surgery, Shaheed did not make another appointment with her to discuss the surgery further or make an appointment to discuss the surgery with a new doctor. Instead, he filed an administrative 602 grievance against Reyes. Therefore, Reyes did not have an opportunity to meet with Shaheed to further discuss plans for surgery and his postoperative care. Reyes' one-time temporary denial does not amount to deliberate indifference because Shaheed's medical record stated that he was tolerating pain, his alignment was good and the surgery was elective. Shaheed does not dispute these facts. Based on this evidence, Reyes was not aware of facts from which she could infer that there was a substantial risk of harm from temporarily denying ankle surgery. *See Farmer*, 511 U.S. at 837 (deliberate indifference requires prison official to draw inference that a substantial risk of harm exists); *Gibson*, 290 F.3d at 1188 (even if prison official should have been aware of risk of harm, but was

7

not, he was not deliberately indifferent).

Nor is Shaheed's evidence that his ankle is now worse sufficient to raise a dispute of material fact that Reyes was deliberately indifferent when she temporarily denied the surgery, because the relevant question is whether she was aware, at the time of the visit, that his ankle was likely to become worse if his surgery was delayed a month. There is no evidence to support such a conclusion.

Summary judgment is therefore granted for Dr. Reyes on the Eighth Amendment deliberate indifference claim.

## II. Claim Against Other Defendants

Shaheed claims the other defendants were deliberately indifferent because they denied his administrative grievances about Dr. Reyes' failure to treat him.

Although actions in reviewing and denying inmate appeals cannot serve as a sole basis for liability under § 1983, *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), a plaintiff may establish liability on the part of defendants involved in the administrative grievance process by proving that his appeal put the defendants on notice that he had a serious medical need that was not being met, and their denial, therefore, constituted deliberate indifference to his medical need. *See Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006) (prisoner's letter to administrator alerting him to constitutional violation sufficient to generate genuine issue of material fact as to whether administrator was aware of violation).

The defendants' denial of Shaheed's grievances regarding Reyes' treatment cannot constitute deliberate indifference because, as discussed above, her one-time temporary denial of surgery was not constitutionally deficient. Furthermore, the first level response to Shaheed's 602 grievance shows that De La Cruz, a named defendant, merely interviewed Shaheed about his claim against Reyes and presented an accurate medical history of his ankle injury and Reyes' interactions with Shaheed. The reviewer encouraged Shaheed "to discuss your medical issues at your next follow up visit." Opp, Ex. I. Podolsky, another named defendant, signed the decision.

The decision did not misrepresent Shaheed's medical history or the result of Shaheed's visit with Reyes. Based on Shaheed's medical record, it appeared that his surgery would be

8

1  approved if he agreed to postoperative housing in the OHU. Reyes' assumption, if mistaken, that
2  Shaheed had not agreed to stay in the OHU after surgery could have been remedied by Shaheed
3  communicating to her or to another primary care provider that, if medically necessary, he would
4  stay in the OHU after surgery.

Shaheed has failed to raise a genuine issue of material fact that that either De La Cruz, Podolsky or the other defendants who reviewed and denied Shaheed's further appeals of Reyes' decision was aware that Shaheed's need for surgery would not be met.

Accordingly, summary judgment is granted to all defendants on this claim.

### III. Motion for Emergency Injunctive Relief

Shaheed moves for an order requiring Dr. Beatty, Shaheed's current primary care provider, to renew a lower bunk bed and lower tier accommodation for Shaheed's injured ankle. Shaheed alleges that Dr. Beatty refused to issue the accommodation in retaliation for his filing this lawsuit.

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party bears the burden of meeting all prongs of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The decision of whether to grant or deny a preliminary injunction is a matter of the district court's discretion. *Grand Canyon Skywalk Devel., LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1200 n.1 (9th Cir. 2013).

Because Shaheed has not succeeded on the merits of his claim, the motion for injunctive relief is denied. The motion is also denied because Dr. Beatty is not a defendant in this lawsuit and a retaliation claim was not asserted in this lawsuit.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The defendants' motion for summary judgment is granted. Dkt. No. 37.
2. The claims against CCHCS and Millimond are dismissed.
3. Shaheed's motion for emergency injunctive relief is denied. Dkt. No. 48.

4. The Clerk of the Court shall enter a separate judgment, terminate all pending motions and close the file.

**IT IS SO ORDERED**.

Dated: June 15, 2015

_____
VINCE CHHABRIA
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARRIEM B. SHAHEED,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA CORRECTIONAL<br>HEALTH CARE SERVICES, et al.,<br><br>    Defendants. | Case No. 13-cv-05751-VC<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 15, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Karriem B. Shaheed ID: H-65017
San Quentin State Prison 1 West Block 67 Low
San Quentin, CA 94974

Dated: June 15, 2015

Richard W. Wieking
Clerk, United States District Court

By:_____
Kristen Melen, Deputy Clerk to the
Honorable VINCE CHHABRIA